Clerk, please. Well, once we're got to get video, there we are getting it. Good. Will the clerk please call the next case? 1-24-2493-WC, consolidated with 1-24-2521-WC, Concrete Structures of the Midwest, Appalee, cross-appellant by Lindsay Vanderford versus the Illinois Workers' Compensation Commission et al., Vincent Secor, appellant, cross-appellee, by Tyler Berberich. Counsel, you may proceed. Mr. Berberich? Good morning, your honors. My name is Tyler Berberich and I represent the appellant, Vincent Secor, in this matter. Your honors, the circuit court in this case erred in setting aside a portion of the decision from the Workers' Compensation Commission that awarded penalties under Section 19K of the Workers' Compensation Act and attorney's fees under Section 16 of the Act. I asked this court to find that the decision of the commission was not against the manifest weight of the evidence, nor contrary to law, and to reinstate the decision of the commission in its entirety. The question of whether an employer's conduct justifies the imposition of penalties in a workers' compensation claim is a factual question, and the factual determination of the commission should be reviewed under the manifest weight of the evidence standard. In this case, your honors, the commission had ample support for its award of penalties and attorney's fees. It's unrebutted that Mr. Secor sustained an accident in January of 2017, and that accident caused a lumbar disc herniation which required surgical repair. After that surgical repair, Mr. Secor unfortunately suffered from post-surgical cauda equina syndrome that caused severe and permanent damage to his lumbar nerve roots. Due to that cauda equina syndrome, Mr. Secor has had a myriad of issues, including severe and ongoing reticular pain in his lower extremities, saddle anesthesia, which has led to difficulty defecating, lack of feeling in his bladder, which has led to difficulty urinating, and has required repeated daily catheterization. A use of a wheelchair due to inability to stand or walk for long periods of time without severe reticular pain, and depression and anxiety related to his pain and disability. Due to that nerve pain, which makes it impossible for him to sit or stand for significant period of time, his treating neurologist, Dr. Pajari, has opined that Mr. Secor can never work again in any capacity. During the pendency of this claim, your honors, Mr. Secor's benefits were consistently unpaid or underpaid, including over $48,000 in underpaid weekly benefits and over $145,000 in unpaid medical expenses. The burden in this case was upon concrete structures to demonstrate a reasonable belief that its denial of benefits or underpayment of benefits was justified, and they just simply wholly failed to do so. Concrete structures relied upon the opinions of Dr. Zellbe and Dr. Noren to dispute the medical portions of this claim. Dr. Zellbe almost comically opined that Mr. Secor had never actually had Acona-Aquina Syndrome, and that he could return to a full duty work as a construction carpenter. Dr. Noren opined that Mr. Secor was magnifying his symptoms, and a large portion of Dr. Noren's opinions were based on that assumption that Mr. Secor was exaggerating his symptoms, which absolutely no other physician in this case had opined or indicated in any way. Mr. Secor has seen a lot of doctors, including many IME doctors, set up by the insurance carrier, and none of them other than Dr. Noren had opined that he was exaggerating his symptoms. These opinions were in contrast to the reasonable opinions of Mr. Secor's treating physicians, Dr. Bejari, his neurologist, who opined that Mr. Secor cannot work in any capacity. Dr. Farag, his pain management specialist, who explained that objective testing, including EMG results, showed what was causing the pain in Mr. Secor's lower extremities and correlated with all of his symptoms. He was not exaggerating these symptoms. Dr. Goldberg, Mr. Secor's original surgeon, who explained that Mr. Secor did have Akata Aquina Syndrome, and that he did have nerve damage from that syndrome, and that his current condition as of the date of Dr. Goldberg's deposition was related to that. Dr. Alterman, who similarly testified that Mr. Secor's bladder dysfunction and that his nerve issues were unlikely to ever improve and that they were related to his accident. And then more than one of respondents' own IME doctors, Dr. Butler, who opined that Mr. Secor did have Akata Aquina Syndrome, and his nerve damage, including his neurogenic bladder, were causally related to his work accident. And Dr. Landry, concrete structure's IME psychologist, who agreed that Mr. Secor's psychological symptoms were in part related to his work accident and his disability. It's well established that it's for the commission to make factual determinations regarding the credibility of witnesses and to weigh the testimony of those witnesses. And in this case, the commission found the opinions of Dr. And went on to find that concrete structure's reliance on those opinions was unreasonable. And they additionally found that the opinions of Dr. Secor's, or Mr. Secor's doctors, were more credible. The determination that concrete structure's reliance upon the opinions of Dr. Zelby and Dr. Noren was unreasonable is certainly supported by the evidence in the record. The commission also found that the concrete structure's reliance upon a labor market survey and report from a company called Vocomotive was not reasonable in underpaying Mr. Secor's benefits. So concrete structure's got a report from Vocomotive, a labor market survey, in which the report itself indicates that they had asked Vocomotive to consider a labor market for Mr. Survey based only on a February 1, 2018 functional capacity evaluation and a note from Dr. Goldberg in March of 2018 releasing Mr. Secor to work within the restrictions of that evaluation. However, what the report did not take into account is that after that evaluation, after that FCE, Mr. Secor had been taken back off work completely by his treating pain management doctor, Dr. Frog. His treating neurologist after that FCE had opined that he was physically unable to perform any work and was permanently disabled. After that FCE, he had been permanently catheterized. He had started using a wheelchair. The symptoms in his lower extremities had increased to the point where he couldn't stand or walk for any significant period of time. None of that was taken into account in the labor market survey performed by Vocomotive. And so the commission properly found that the reliance upon that survey to underpay Mr. Secor's benefits was unreasonable and vexatious. It's clear that the commission in this case had sufficient evidence to support their award of penalties and attorney's fees. And the, just to address for a moment, the circuit court below opined that the commission had misapplied the standards of section 19L, 19K, and 16 in awarding penalties. However, the commission properly applied section 19K and section 19L. Section 19K and section 16 require that the denial of benefits or the underpayment of benefits was made unreasonably or vexatiously. And as I detailed previously, the commission found that the reliance from concrete structures on Dr. Zelby and on Dr. Noren was unreasonable and specifically found the reliance upon the labor market survey from Vocomotive was both unreasonable and vexatious. And so the commission did in fact find that the unreasonable and vexatious behavior of concrete structures met that higher burden to award penalties under section 19K as well as attorney fees under section 16, in addition to the 19L penalties, which were essentially the late fee for delay and proper payment of benefits without a reasonable basis. The commission did not conflate the standards for awarding these penalties and they had ample evidence in the record. In this case, your honors, we'd ask that the decision of the commission be reinstated in its entirety as it was based on the record. It was based on Mr. Secor's current condition in which he is permanently and totally disabled from work and that he could not return to work in any capacity based upon the opinions, not only of his treating physicians who explain the connection between his disability and his work accident, but also a number of respondents on IME doctors who agree that Mr. Secor has permanent nerve damage from Akata Aquinas syndrome that is causally related to his original work accident. So, unless there are any questions from the court with that, I would rest. Any questions from the court? No? Okay. You'll have time in reply. Absolutely. Thank you. Counsel Vanderford, you may respond. May it please the court, counsel, my name is Lindsay Vanderford appearing on behalf of the appellee slash cross appellant concrete structures of the Midwest, my first time doing this. And given the cross appeal, there are actually four issues before the court today. The first being the one discussed by Mr. Brewerage previously, which is whether the IWCC decision awarding penalties and attorney fees was against manifest weight of the evidence. But the second being whether the IWCC decision awarding permanent and total disability benefits is against the manifest weight of the evidence, the most important and the one that I'll discuss likely the most after penalties. And then the two other issues stemming from there, whether the IWCC decision awarding TTD and maintenance benefits is against the manifest weight and whether the IWCC decision awarding medical expenses is against the manifest weight. As it pertains to the first issue, the award of penalties and fees, the case law is clear. The relevant question to consider is whether an employer acted in bad faith or with improper purpose, whether the employer relied reasonably on expert medical opinions. Petitioner was released to return to restricted work by his treating doctor, Dr. Goldberg. Yes, Dr. Goldberg later took petitioner back off of work, but during his deposition, Dr. Goldberg admitted he only did so based on subjective complaints without any objective changes since his prior release to restrictions. Respondent's expert, Dr. Noren agreed with Dr. Goldberg's release and with the findings of the FCE upon which all of those restrictions were placed. Respondent reasonably relied on Dr. Noren's expert opinions when challenging liability. In good faith, respondent paid nearly $800 in weekly benefits. Benefits were not terminated despite petitioner's lack of any type of job search. They were paid in line with respondent's expert opinions petitioner was capable of work at at least the medium light duty demand level and of certified vocational rehabilitation experts providing evidence of a stable labor market within those restrictions. Because respondent clearly acted neither unreasonably nor vexatiously in relying on these experts, the commission erred in its award of penalties and fees. This opposite conclusion is clear and the award was against the manifest weight of the evidence. As it pertains to the second issue, the award of permanent and total disability benefits, the commission erred in its analysis of the testimony of petitioner and the medical opinions of Drs. Noren, Goldberg, Bejari, Zelbe, and Landry. The commission failed to see the big to find petitioner permanently and totally disabled. Given the inconsistencies in testimony as described in our brief and those relied upon by our expert Dr. Noren, a pain management specialist who agreed with the treating doctor's initial restrictions, the commission should have assigned greater weight to Dr. Noren's opinions. The commission failed to note the alignment between Dr. Noren and the treater, Dr. Goldberg, as far as their opinions with regard to work restrictions. The commission should have found it persuasive that opposing experts agreed petitioner could function in a matter compatible with the FCE. Dr. Bejari is the only doctor out of many to have opined petitioner not be able to return to work. In our report offered into evidence, our certified rehabilitation counselor, Joe Belmonte, indicated Dr. Bejari has no credential demonstrating education, training, or expertise or certification in vocational rehabilitation, job placement, or labor market analysis and is unqualified to give this opinion. The commission failed to even address this report or exhibit in its decision. Instead, it addressed only the labor market survey included in Respondent Exhibit No. 12. The commission erred in its analysis of this survey, noting the findings were not based on any meeting with petitioner, were not based on any vocational testing, and lacked evidence of accommodation. Petitioner clearly met with certified rehabilitation counselor Belmonte. Vocational testing took place as relied upon per the notations on pages four and five of the report. Furthermore, petitioner's restrictions were clearly noted on pages three through four of the report, which indicates a cursory exam was conducted with regard to, quote, available job openings within Mr. Secor's physical capabilities and within 25 miles of his home, end quote. The commission also failed to consider the validity of the FCE report relied upon by the expert rehabilitation specialists and Dr. Goldberg's initial reliance on this valid report to return petitioner to work based on the FCE. During his deposition, Dr. Goldberg admitted he issued an off-work note based entirely on petitioner's subjective complaints with no objective changes after the FCE. Furthermore, the basis for Dr. Bajari's opinion is tainted by petitioner's clear symptom magnification. Therefore, her opinion should have been assigned little weight. The commission erred on relying on it as a basis for the award and instead given the expert rehabilitation counselor and his report the greater weight they deserve. Dr. Norrin, Dr. Zelbe, and Dr. Landry all concluded symptom magnification is at issue and significant in this case. Therefore, the commission should have found the diagnosis of Dr. Norrin, which is subjective residual pain complaints exacerbated by symptom magnification requiring palliative medical management with a return to work within the FCE restrictions to be the most credible. Based upon the evidence and testimony with regard to causal connection, petitioner did not provide sufficient evidence to support an award of permanent total disability and in fact the opposite conclusion should have been made that petitioner would be able to return to some form of work. The award of permanent total disability benefits was against the manifest weight of the evidence. As it pertains to the third issue, the award of TTD and maintenance benefits, Dr. Goldberg and Dr. Norrin agreed petitioner could have returned to work pursuant to the second issue. Pertaining to your last argument, which in your brief is designated as B, what legal authorities have you cited in support of any of these arguments? My recollection is there were none cited. I'm just looking here to ensure that that's correct. I don't want to misstate anything to the court. There is no case law cited in section B. Isn't it required of you as under our rules to support your argument with relevant legal citations? I mean in the argument section, your honor? Yes. Because otherwise you're presenting an argument and expecting us to do the research to find if there's any legal support for it. Well, I mean I didn't cite any case law, your honor, so I apologize for that. Thank you. As it pertains to the third issue, the award of TTD and maintenance benefits, Dr. Goldberg and Dr. Norrin agree petitioner could have returned to work pursuant to the findings of the FCE conducted on February 1, 2018. Dr. Goldberg released petitioner under those restrictions as of March 5, 2018. He repeated his recommendation for a return to work under the restrictions of the FCE in his narrative report of February 16, 2019. Given the agreement of opposing experts, this release should have been assigned great weight. Records and testimony confirm petitioner was never advised vocational rehabilitation termination would be appropriate by vocomotive. Dr. Goldberg testified to confirm petitioner's objective findings were unchanged between the time of his release on March 5, 2018 and his follow-up appointment. As such, the commission should have found petitioner abandoned his vocational efforts and is therefore not entitled to TTD, maintenance, wage differential, or permanent disability benefits. This opposite conclusion is clearly apparent. As to the fourth issue, the award of medical expenses, the commission should have limited causal connection as opined by Dr. Norrin and awarded only those bills in line with that opinion based on our prior detailed arguments on previous issues. In conclusion, the IWCC decision was against the manifest weight of the evidence. We would ask that it therefore be reversed with a decision denying penalties and fees, denying TTD, maintenance, wage differential, and permanent total disability benefits, and reducing causation, permanency, and medical records in accordance with Dr. Norrin's opinion. Any questions from the bench? Mr. Berberich, you may reply. Thank you, Your Honor. I will directly address first what counsel had stated about the agreement between Dr. Goldberg and Dr. Norrin regarding Mr. Secor's restrictions. That indication completely ignores the fact that by the time Mr. Secor had stopped performing vocational rehabilitation, he was no longer treating with Dr. Goldberg. Dr. Goldberg was his treating surgeon. He transferred his treatment to his pain management physician, Dr. Farag, who took him off of work and took him out of vocational rehabilitation, told him to be completely off work, and never released him back to work all the way through the date of arbitration. And he began treatment with Dr. Bejari due to his ongoing nerve pain. His treating neurologist, who is opined that he is physically unable to work, and that he is permanently disabled from any type of work. The counsel stated a number of times that who should have been given more weight, which doctor should have been given greater weight in this case. However, as stated previously, it's for the commission to make factual determinations regarding the credibility of witnesses and the weight given to those witnesses. Unless the commission's decision is against the manifest weight of the evidence, which it is not in this case, then their determinations regarding the weight given to each of these physicians should stand. The commission's decision was clearly not against the manifest weight of the evidence, as there's ample support for the determinations that the petitioner was permanently disabled based on the opinion of Dr. Bejari, and that he was appropriately awarded temporary total disability benefits as he was taken back off work completely by Dr. Farag, which is what ended his vocational rehabilitation work. Of note, also your honors, counsel noted that the commission's analysis of the vocational rehabilitation report from Vocomotive, the labor market survey, but I would ask this court to review that report and note that there was in fact no updated meeting with Mr. Secor. There was no updated testing with Mr. Secor. What the report says, your honors, is that vocational rehabilitation meetings were previously held and Mr. Secor previously participated and there was previous testing. All that had happened when he started vocational rehabilitation with Vocomotive, but that was prior to him struggling so badly in vocational rehabilitation. He testified he'd have intense pain in his lower half when he tried to sit and do his vocational rehabilitation work at Vocomotive. He was observed and noted by the vocational counselors that he'd have to shift in his seat repeatedly due to pain. Vocational counselor Joseph Belmonte noted that Mr. Secor had lost time from vocational rehabilitation process because he was trying to deal with significant pain. His nerves would become overwhelmed when he attempted to sit at Vocomotive and perform the tasks they were asking of him. Those are the reasons that when he went to Dr. Farag, his pain management doctor, Dr. Farag said, I don't want you doing this. You're completely off work. That is why he ended vocational rehabilitation. He never abandoned anything. He was told by his treating physician that he was completely off of work and that is why the commission had an appropriate basis to award temporary total disability benefits when he was taken back off work by Dr. Farag and then kept off work by Dr. Farag and Dr. Bejari through the date of arbitration and it was opined by Dr. Bejari that he was permanently and totally disabled from all work. So, your honors, based on the record, the commission had ample evidence and ample support for their findings that Mr. Secor was permanently and totally disabled and ample support for their award of temporary total disability benefits and medical benefits in this case and we would ask that this court reverse the decision of the circuit court and reinstate the decision of the commission in its entirety. Questions from the court? No? Okay. Counsel Vanderford, would you like to address your cross appeal now? Your honors, all I would say is that it's concrete structure's position that clear opposite conclusions should have been made by the commission on all four of these issues and I would just rest with that statement. Okay. Mr. Burbridge, would you wish to respond? Nothing further, your honors. I will stand on my brief other than what I've already stated here today. Okay, very good. And nothing further, Counsel Vanderford? Nothing? No, your honor. Okay. Any questions for both counsel from the court regarding the appeal and the cross appeal? No? Okay. Well, thank you, counsel, both for your arguments in this matter this morning. We'll be taking our advisement and the written disposition while issuing this matter. The clerk of our court at this time will escort you from our remote courtroom and we'll proceed to the next case and happy holidays to both of you. Thank you. Thank you.